United States District Court
Southern District of Texas
**ENTERED**
August 13, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DEMETRIO FIGUEROA, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:23-cv-090 |
| | § | |
| MARTIN O'MALLEY, | § | |
| *Commissioner of Social Security,* | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S PETITION FOR REVIEW OF DENIAL OF DISABILITY INSURANCE BENEFITS

### I. Synopsis

Plaintiff Demetrio Figueroa ("Figueroa") appeals his denial of benefits by the Commissioner (the "Commissioner") of the Social Security Administration ("SSA"). Figueroa complains the Administrative Law Judge ("ALJ") concocted a mental residual functional capacity ("RFC") *ipse dixit* and never addressed any vision-related limitations in the physical RFC assessment. Dkt. No. 8.[1]  Figueroa further argues the ALJ failed to apply the relevant standards to determine the availability of full-time work consistent with the RFC.  *Id.*  Because the ALJ's mental RFC determination is not supported by substantial evidence, this court finds the Commissioner's denial of disability benefits was improper.

This case was referred to the Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1).  After review of the parties' briefs, the record, and the relevant law, the undersigned Magistrate Judge recommends granting Figueroa's petition for review of the denial of disability insurance benefits and remanding this case for further proceedings consistent with this Report and Recommendation.

---

[1] The citation to the record refers to the Bates-stamped number on each record page.

## II. Jurisdiction

This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner for claims arising under Title II of the Social Security Act, 42 U.S.C. § 421.

## III. Standard of Review

This Court's review of the Commissioner's decision is limited to determining whether the decision was supported by substantial evidence and whether the relevant legal standards were applied in reaching this decision. *Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir. 1992). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). When applying the substantial evidence standard, it is not to "reweigh the evidence in the record, not try the issues *de novo*, nor substitute [its] judgment for that of the [Commissioner's]." *Johnson v. Bowen*, 864 F.2d 340, 343. "Conflicts within the evidence are not for the court to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The ALJ's decision must stand or fall on the rationale set forth in the ALJ's opinion. *Newton v. Apfel*, 209 F.3d 455, 458 (5th Cir. 2000). If the Commissioner's findings are supported by substantial evidence, the findings are conclusive and so must be affirmed. 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

## IV. Disability Determination Process

Title II of the Social Security Act provides benefits to individuals with a disability. 42 U.S.C. § 423(d)(1)(A); *Heckler v. Campbell*, 461 U.S. 458, 459-61 (1983). The Social Security Act defines disability as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.*

A claimant seeking Social Security benefits bears the burden of proving a disability as defined by the Social Security Act, 20 C.F.R. § 416.920(a)(4). A claimant satisfies that burden, when he or she demonstrates a physical or mental impairment which lasts at least twelve months and precludes that person from pursuing any substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(ii). Once the claimant proves disability as defined by the SSA, the administrative law judge utilizes a five-step sequential process to determine whether the claimant can perform substantial gainful activity. This five-step process is set forth in 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f). If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary as the person is entitled to benefits. 20 C.F.R. §§ 404.1520(a), 416.920(a).

At Step One, the claimant must not be presently working at any substantial gainful activity, or work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972.

At Step Two, the claimant must have an impairment or a severe combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), cited in *Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000).

At Step Three, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d).

At Step Four, the impairment or impairments must prevent the claimant from returning to his past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). Past relevant work is defined as substantial gainful activity performed within the last fifteen years, where the claimant's employment lasted long enough for the claimant to learn how it is performed. 20 C.F.R. § 404.1560(b)(1).

At Step Five, the impairment must prevent the claimant from doing any work. To determine this, the ALJ considers the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § § 404.1520(f), 416.920(f); *Crowley v.*

*Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999).  Residual functioning capacity "is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."  *Irby v. Barnhart*, 180 Fed. App'x 491, 493 (5th Cir. 2006) (unpub.) (citing Social Security Ruling ("SSR") 96-8p).[2]

The Commissioner may demonstrate the availability of other employment for the claimant.  If the Commissioner accomplishes this, the burden of proof shifts back to the claimant to rebut that finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (per curiam).  The claimant must then prove he or she is unable to perform the alternate work the Commissioner identified. *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986); *Millet v. Schweiker*, 662 F.2d 1199, 1201 (5th Cir. 1981).

The ALJ uses a two-part determination when considering the claimant's impairment and the claimant's residual functioning capacity.  The first part determines whether the claimant suffers from a medically determinable impairment "reasonably capable of producing" the claimed symptoms. *Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Oct. 25, 2017).  Claimed symptoms "will not be found to affect [one's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529(b).  To proceed to the second part of the inquiry, the ALJ must find that the claimant has a medically determinable impairment capable of causing the alleged symptoms. *Winget v. Astrue*, 2007 WL 4975206, *10 (W.D. Tex. 2007) (unpubl.).  If the ALJ does not find that the claimant indeed has a medically determinable impairment capable of causing the alleged symptoms under the first part of the inquiry at Step Five, the ALJ cannot proceed to the second part of the analysis.  Therefore, a claimant cannot receive a positive disability determination if the claimant's impairment would not

---

[2] "The Social Security Administration's rulings are not binding on this court, but they may be consulted when the statute at issue provides little guidance. The Fifth Circuit has frequently relied upon the rulings in evaluating ALJ's decisions."  *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).

objectively and reasonably cause the reported symptoms. But if the medical evidence objectively identifies an impairment that could reasonably produce the claimed symptom, the inquiry turns to the severity and impact of that symptom under the second part of the inquiry.

The second part of Step Five evaluates the intensity, persistence, and limiting effects of the individual's symptoms" on a person's ability to do basic work activities. SSR 16-3p (S.S.A Oct. 25, 2017). In performing this evaluation, the ALJ considers the following matters: objective medical evidence; the claimant's testimony; the claimant's daily activities; the location, duration, frequency, and intensity of the individual's symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms. *Id.* In addition to medication, the ALJ also considers other treatment the individual receives or has received for relief of pain or other symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c). Lastly, the ALJ also considers any other factors relating to the claimant's functional limitations and restrictions resulting from pain or other symptoms. *Id.*

When a mental impairment is present at Step Five, the ALJ must "first evaluate [claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [claimant has] a medically determinable mental impairment." 20 C.F.R. § 404.1520a(b)(1); *See also* 20 C.F.R. § 404.1520a; *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001) (determining merits of mental disability claims). If the ALJ determines that the claimant has a medically determinable mental impairment, then the ALJ must use a special technique to evaluate the severity of the impairment. To do so, the ALJ evaluates the degree of functional limitation resulting from the impairment in four separate areas deemed essential for work: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. §§ 404.1520a(b)(2)–(c)(4). These limitations can be rated "none, mild, moderate, marked, [or] extreme." 20 C.F.R. § 416.920a(c)(4). If the degree of functional limitation is "none" or "mild" in each of the four areas, the ALJ must find the impairment "not

severe," which generally concludes the analysis and terminates the proceedings. 20 C.F.R. § 404.1520a(d)(1).  If the mental impairment is "severe," under §§ 404.1520a(c)(4) and (d)(1)(2), the ALJ must then determine if it meets or equals a listed mental disorder under Appendix 1.  *See* 20 C.F.R. § 404.1520a(d)(2).  If the impairment is severe but does not reach the level of a listed disorder, then the ALJ must conduct an RFC assessment. 20 C.F.R. § 404.1520a(d)(3).

## V. Background

### A. Administrative Procedural History

Figueroa filed an application for disability insurance benefits under Title II of the Social Security Act on October 14, 2021, alleging a disability onset of December 15, 2017. Dkt. No. 5-6, p.171.  Figueroa's application was reconsidered then denied on January 6, 2022.  The Social Security reconsidered Figueroa's application and denied it again on June 29, 2022. Dkt. No. 5-4, pp. 83-84.  Subsequently, a hearing was held before ALJ Hiral Patel on February 28, 2023.  Dkt. No. 5-3, p. 44.[3]  Post-hearing, Figueroa filed Exhibit 24E, "post-hearing objections to vocational expert testimony," which the ALJ entered as evidence.  Dkt No. 5-7, pp. 355-356.

Ultimately, ALJ Patel found that Figueroa was not disabled.  Dkt. No. 5-3, p. 39. Figueroa filed an appeal of the ALJ's decision with the Appeals Council ("AC").  Dkt. No. 5-3, pp., 1-3.  The Appeals Council denied further review, finding no regulatory reason to review the ALJ's decision.  *Id.* at 1.  At this point, Figueroa had exhausted all available administrative remedies.  On June 13, 2023, Figueroa initiated this action challenging his denial of benefits pursuant to 42 U.S.C. § 405(g), seeking to reverse the negative determination of the Commissioner.  Dkt. No. 1.

### B.  Factual History

Figueroa was born in 1972, making him forty-eight years old at the time of his initial application to the Social Security Administration.  Dkt. No. 5-4, pp. 74-82.  His employment history demonstrates relevant full-time work experience as a member of the

---

[3] The full transcript of this administrative proceeding is available for review at Docket Number 5-3, pages 44-73.

military and as an emergency medical technician.  Dkt. No. 5-7, pp. 185-186.  Figueroa claims his current physical and mental disability status stem from the following conditions: posttraumatic stress disorder ("PTSD"), Type 2 diabetes mellitus, peripheral neuropathy in his extremities, bilateral tinnitus, and hypertension.  Dkt. No. 8, p. 3.

### 1. Commissioner Reviewed Medical Evidence

At the initial review stage, Dr. Richard Lewis, M.D. reviewed Figueroa's medical records regarding his physical abilities as part of the disability process.  Dkt. No. 5-4, pp. 78-83.  Upon reconsideration, the record was reviewed by Dr. W. Eduard Haim, M.D.  Dkt. No. 5-4, pp. 85-87.  Concerning Figueroa's physical abilities, the ALJ found both opinions from the state agency consultants persuasive, because they were consistent with most of the objective medical evidence.  Dkt. No. 5-3, p. 36.

At the initial review stage, state agency psychological consultant Dr. W. Logan, M.D. evaluated Figueroa's mental health and any resulting limitations on residual functional capacity.  Dkt. No. 5-4, pp. 74-77.  Dr. Margaret S. Meyer, M.D. also reviewed the record to evaluate mental limitations.  Dkt. No. 5-4 at 87-93.  Drs. Logan and Meyer agreed that Figueroa had moderate limitations in several areas of mental functioning, including:

> (1) the ability to maintain attention and concentration for extended periods, (2) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, (3) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, (4) the ability to interact with the general public (5) the ability to accept instructions and respond appropriately to criticism from supervisors, (6) the ability to get along with coworkers and peers without distracting them or exhibiting behavioral extremes, and (7) the ability to respond appropriately to changes in the work setting.

Dkt. No. 5-4, pp. 80, 91-92.

Concerning Figueroa's RFC and mental health limitations, the ALJ found the opinions from the state psychological consultants unpersuasive.  The ALJ viewed the state psychological consultant's evaluations as "internally inconsistent," because each

evaluation identified moderate limitations in "interacting with others" but "failed to incorporate any social functioning limitations." Dkt. No. 5-3, p. 37. The ALJ ultimately found that Figueroa "could understand, remember, and carry out simple instructions; occasionally interact with supervisors, coworkers, and the public; and could deal with occasional changes in a routine work setting." *Id.*

Several treating healthcare professionals contributed significantly to Figueroa's submitted medical history, resulting in several years of relevant medical treatment.

Beginning in 2017, Figueroa received both in-patient and out-patient care for post-traumatic stress disorder ("PTSD") and alcohol use disorder. Dkt. Nos. 5-9, 5-10. Also in 2017, Figueroa underwent an evaluation for potential diabetes-related retinopathy. Dkt. No. 5-9, p. 1110. The evidence shows results indicating mild to moderate nonproliferative diabetic retinopathy. *Id.*

In 2018 and 2019, Figueroa received psychiatric treatment services from Dr. Jose L. Garcia through the Veterans Affairs Administration ("VA"). Dkt. No. 5-9. Dr. Garcia documented Figueroa's outpatient care and moderately improved chronic PTSD symptoms. *Id.* In late 2019, Dr. Garcia noted that Figueroa's anxious mood, and his immediate memory appeared further impaired. *Id.* at 640-642. Through his visits to Dr. Garcia, Figueroa presented evidence of a well-documented history of traumatic brain injury, suicidal ideation, and alcohol abuse. *Id.*

In September and October 2020, Dr. Garcia's psychiatry notes indicate a poor immediate memory and poor concentration in Figueroa. Dkt. No. 5-9, p. 608-610. Figueroa restarted psychiatric treatment with prescription medication. *Id.* However, Dr. Garcia's mental status examinations determined Figueroa's functioning was within normal limits. *Id.* Throughout 2022, Figueroa's pharmacological and psychiatric treatment with Dr. Garcia appears to remain stable. Dkt. No. 5-9, pp. 398-403, 462.

Lastly, concerning Figueroa's visual acuity and diabetic retinopathy, in visits to the VA Clinic for diabetic retinopathy monitoring, he reports dark spots accompanied by headaches. Dkt. No. 5-10, pp. 1230, 1238.

### 2. Hearing Testimony

At the hearing before the ALJ, Figueroa testified to having difficulty with emotional regulation and memory.  Dkt. No. 5-3.  Specifically, Figueroa testified that he "was not able to handle jobs or even being around people" and that he "tend[s] to push people away because I'm afraid to do something else."  *Id.* at 53, 54.  He also testified to completing treatment for mental health rehabilitation through government agencies, but "they don't seem to work."  *Id.* at 54.  Concerning the activities of daily living, Figueroa testified that while difficult and "really slow," through "several tries" he can bathe, dress, and feed himself.  *Id.* at 59.  Concerning his physical health condition and related symptoms, Figueroa states his back pain "is constant" and "getting worse and worse and to the point where I can't do much."  *Id.* at 57, 58.  According to his testimony, his diabetes and peripheral neuropathy are not well-managed with medication or alternative treatments. *Id.* at 55, 57.  Figueroa also testifies his vision is "very poor, there's times I can't see. I see light spots now. Dark spots in my eyes I think, can't see like – sometimes it's good I would say. But sometimes I can't even see five feet in front of me." *Id.* At 56.  At one point in the hearing, the ALJ felt it necessary to pause the testimony for a few minutes so Figueroa to regulate himself enough to continue participating in the hearing.  When the hearing resumed, Figueroa was examined by his attorney.  *Id.*  Figueroa admitted that despite "try[ing] just about everything," he has found little to no relief from symptoms.  *Id.* at 64.

Vocational expert ("VE"), Hannah E. Roberts, answered hypothetical questions about potential exertional limitations of an individual of Figueroa's age, education, and work experience.  Dkt. No. 5-3, pp. 37-39.  The VE testified to the use of both SkillTran software and the United States Census Report to determine the availability of full-time work available in the marketplace.  Dkt. No. 5-3, pp. 69-72.

## VI. The Commissioner's Decision

Using the Social Security Administration's established five-step sequential evaluation process for determining whether an individual is disabled under 20 C.F.R. § 404.1520(a), the ALJ found Figueroa not disabled.

At Step One, ALJ Patel found that Figueroa last met the insured status requirements of the Social Security Act on March 31, 2022. Dkt. No. 5-3, p. 18. The ALJ further found that Figueroa did not engage in substantial gainful activity since December 15, 2017, the alleged onset date. *Id.* at 19.

At Step Two, the ALJ noted the following severe impairments: "diabetes mellitus, diabetic retinopathy, peripheral neuropathy, spinal impairment, migraine, obesity, depression, anxiety, posttraumatic stress disorder (PTSD), and alcohol use disorder." Dkt. No. 5-3, p. 19.

At Step Three, the ALJ found Figueroa's impairments, considered alone or together, did not meet or medically equal the severity of the one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404. 1526). Dkt. No. 5-3, p. 20.

At Step Four, the ALJ found Figueroa unable to perform past relevant work as a paramedic. Dkt. 5-3, pp. 37-38.

At Step Five, to determine the impact of Figueroa's RFC, the ALJ considered the following: Figueroa's testimony, notes of various treating professionals, objective medical evidence, and the state agency RFC assessments. Dkt. No. 5-3, p. 24. The ALJ found that Figueroa's RFC allowed him to perform light work as defined in 20 C.F.R. 404.1567(b) except that he could occasionally climb ladders, ropes or scaffolds; could frequently climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; was limited to occupations that required no more than frequent near acuity, far acuity, field of vision, accommodation, or depth perception; could understand remember, and carry out simply instructions; could occasionally interact with supervisors, coworkers, and the public; could deal with occasional changes in routine setting; and was limited to occasional exposure to pulmonary irritants. Dkt. No. 5-3, p.24. Further, the ALJ found that Figueroa's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence." *Id.* at 25.

In this same step, the ALJ relied on the testimony of the VE to determine the type and level of work available to a person equivalent to Figueroa's assessed RFC.  Dkt. No. 5-3, pp. 37-39.  The VE found, using the ALJ's assessed RFC, Figueroa could perform light, unskilled work as a mail clerk, office helper, and routing clerk. *Id.* at 39. The ALJ determined Figueroa "was capable of making a successful adjustment to other work that existed in significant number in the national economy."  *Id.*  Therefore, the ALJ found Figueroa did not qualify as disabled.

## VII. Analysis

### A. Statement of Issues

On appeal is whether the ALJ applied the relevant legal standards and whether substantial evidence supports the RFC determination.  Dkt. No. 8.  Figueroa alleges that the ALJ's assessment concerning his mental and physical RFC limitations was faulty, because it was "based upon his own lay review of the medical records and not based upon any medical opinions."  Dkt. No. 8, pp. 15-18.  Figueroa also contends the ALJ incorrectly "relied upon job data defining 'full-time' as thirty-five hours-per-week" to determine the availability of jobs that he could potentially perform.  Dkt. No 8, pp. 19-21.  In response, the Commissioner contends that "substantial evidence supports the ALJ's determination that Plaintiff was not disabled, and the ALJ followed the correct legal standards."  Dkt. No. 11.

### B. Mental RFC

Between steps three and four of the sequential evaluation process, the claimant's residual functional capacity must be determined.  20 C.F.R. 404.1520(e).  At the hearing stage of the disability determination process, the ALJ is solely responsible for determining an applicant's RFC.  20 C.F.R. § 404.1546.

In their RFC assessment, the ALJ is tasked to evaluate an individual's ability to engage in sustained work-related mental, non-exertional activities which includes an initial "function-by-function" of the individual "mental capacities." *Myers v. Apfel,* 238 F.3d 617, 620 (5th Cir. 2001) (citing SSR 96-8p).  Under the current regulations, the ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to

any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). However, an "ALJ is required to discuss the evidence and explain the basis of his findings at each unfavorable step of the sequential process." *Audler v. Astrue,* 501 F.3d 446, 448 (5th Cir. 2007). As a layperson, the ALJ should not "draw his own medical conclusions from some of the data, without relying on a medical expert's help." *Frank v. Barnhart*, 326 F.3d 618, 621-22 (5th Cir. 2003) (per curiam) (cautioning that an ALJ "must be careful not to succumb to the temptation to play doctor," as "lay intuitions about medical phenomena are often wrong."). "[I]t is clear that the ALJ must consider all the record evidence and cannot pick and chose only the evidence that supports his position." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). This idea has been said to be "especially profound" when the case involves a mental disability." *Salmond v. Berryhill,* 892 F.3d 812, 818 (5th Cir. 2018). Put simply, an ALJ may not "independently decide the effects of Plaintiff's … impairments on [his] ability to perform work-related activities." *Thornhill v. Colvin*, No. 3:14-CV-335-M 2015 WL 232844, at *10 (N.D. Tex. Jan. 16, 2015).

Figueroa argues the ALJ failed to apply the relevant legal standards when determining his mental RFC and that the mental RFC determination itself was not based on substantial evidence. Dkt. No. 8, pp. 1, 15. The Commissioner argues the ALJ properly considered Figueroa's mental impairment, contending the ALJ adopted appropriate portions of the state agency psychological consultants' opinions and interpreted the relevant medical evidence to support the mental component of the RFC. Dkt. No. 13, p. 7. The Commissioner also argues substantial evidence supports the ALJ's RFC determination when "the ALJ adopt[s] the State Agency psychiatrists' RFC that Plaintiff was limited to understanding, remembering, and carrying out only simple instructions." *Id.*

Here, the ALJ made a mental RFC determination that reads in relevant part: "the claimant could understand, remember, and carry out simple instructions; occasionally interact with supervisors, coworkers, and the public; and could deal with occasional changes in a routine work setting." Dkt. No. 5-3, p. 24. However, the ALJ found both opinions of State agency psychological consultants unpersuasive, labeling them as "internally inconsistent." Dkt. No. 5-3, p. 37. The ALJ declined to provide articulation as

to opinion evidence from the VA, citing 20 C.F.R. 404.1520b(c) for the idea that he need not describe evidence "inherently neither valuable nor persuasive." This left the persuasiveness of alternate medical opinions as to Figueroa's mental functioning on his ability to work unaddressed. Dkt. No. 5-3, p. 37.  The ultimate RFC determination was therefore devoid of medical opinion evidence.  The ALJ's discussion of Figueroa's psychiatric history and present mental illness is a recitation of the medical evidence.  It does not analyze or sufficiently explain why the inconsistent opinions offered by the consultants are unpersuasive or why they must otherwise be rejected.  While the ALJ does point to objective evidence of multiple "generally normal" mental status examinations in the record, the ALJ provides no description how this evidence was used to determine limitations and the impact of those limitation on Figueroa's ability to work.

Consequently, the ALJ's RFC determination is a conclusory assertion "beyond meaningful judicial review" and does not meet the substantial evidence threshold.  *Audler*, 501 F.3d at 448-89.  Because the ALJ's findings of fact and ultimate conclusions present evidence inadequately correlated to the identified RFC limitations, this Court finds that substantial evidence does not support the ALJ's RFC finding and recommends the case be remanded for further consideration.

### C. Physical RFC

On appeal, Figueroa argues the ALJ  failed to support by substantial evidence the physical RFC findings as it relates to vision loss from diabetic retinopathy. Dkt. No. 8, pp. 1, 18.  The Commissioner argues the ALJ properly considered Figueroa's diabetic retinopathy diagnosis in view of the medical examination evidence which noted his visual acuity as 20/20 in both eyes, given correction.  Dkt. No. 13, p. 4.

Because the Court is recommending that the case be remanded for further administrative proceedings based on an improper RFC assessment as to Figueroa's mental impairment, the Court need not reach the related issue of the vision RFC assessment.  On remand, the ALJ will have the opportunity to reconsider any revised functional limitations. However, if the Court is inclined to rule specifically on the appropriateness of the ALJ's evaluation on visual limitations, this Court recommends a finding that the physical portion

of the ALJ's RFC applied the correct legal standards and is supported by substantial evidence.

The ALJ detailed their consideration of Figueroa's extensive medical history which includes several visual examinations. *See generally* Dkt. No. 5-3, pp. 20-38. The ALJ specifically noted that Figueroa's underlying condition of Type 2 diabetes mellitus remained largely uncontrolled. Dkt. No. 5-3, p. 37. The ALJ also detailed optometry visits which note 20/20 visual acuity in both eyes when correction was worn. Dkt. No. 5-3, pp. 26-7. The ALJ considered objective retinal imaging which noted only moderate retinopathy. Dkt. No. 5-3, pp. 28-9. The ALJ found persuasive the assessments of the State agency physicians who based their assessments on Plaintiff's diagnosed impairments. Dkt. No. 5-3, p. 36. Given the totality of the record, the Court finds the ALJ gave "careful consideration of the entire record," including a voluminous medical history, in accordance with the requirements of 20 C.F.R. § 416.920(c). This Court recommends, should this issue be reached, a finding that substantial evidence supports the ALJ's conclusion that Figueroa's condition did not meet the listing criteria for a vision-related condition; and the ALJ's evaluation of Figueroa's visual impairments and their relationship to availability of work in subsequent steps of the disability process properly applied the relevant legal standards. Dkt. No. 5-3, pp. 20, 26, 38-9.

### D. 40 Hour Work Week

On appeal, Figueroa argues that the ALJ improperly relied on the definition of "full-time" work. Dkt. No. 8, p. 1. The Commissioner argues the ALJ's decision is supported by substantial evidence using the relevant legal standards to support the finding that Figueroa could perform other work. Dkt. No. 13, p. 9.

At the fifth step of the disability determination process, the Commissioner bears the burden of establishing "the existence of other available substantial gainful employment that a claimant can perform." *Kneeland v. Berryhill,* 850 F.3d 749, 753-4 (5th Cir. 2017). This burden is met through the production of substantial evidence "that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [their RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c), 416.960(c). If

the Commissioner can meet this burden, the claimant must then prove that the claimant does not have the ability to perform the alternative work identified. 42 U.S.C.A. § 423(d)(1)(A).

Because the Court is recommending that the case be remanded for further administrative proceedings, the Court need not reach the issue of the vocational expert's testimony. On remand, the ALJ will have the opportunity to reconsider any revised functional limitations and pose a new set of questions to the vocational expert if appropriate. However, if the Court is inclined to rule on this claim, this Court recommends it should be denied.

Post-hearing, and again in their support brief, Figueroa argues that the ALJ improperly relied on the definition of "full-time" work provided by Vocational Expert Hannah Roberts. Dkt. No. 5-7, pp. 355-356; Dkt. No. 8, p. 1. During the hearing, VE Roberts testified that she consulted a "variety of sources" to determine availability of full-time jobs in the national economy. Dkt. No. 5-3, p. 70. Upon interrogation by Figueroa's attorney, VE Roberts stated, "I use a software called SkillTran. I also have reviewed the labor – I'm sorry, 2000 Decennial Census." *Id.* However, VE Roberts was unable to advise as to the definition of full-time work utilized by the SkillTran software.

Here, the ALJ relied on the testimony of VE Roberts to support a finding that past relevant work was no longer available to Figueroa. Dkt. No. 5-3, p. 38. The ALJ further utilized the testimony of VE Roberts to substantiate a finding that there is other work in the national economy sufficiently available to Figueroa. Dkt. No. 5-3, p. 39. While the ALJ did not address the appropriateness of the use of SkillTran to evaluate a 40-hour workweek, the reliance on the testimony of VE Roberts was appropriate. The ALJ is tasked to take "administrative notice of reliable job information available from various governmental and other publications" which include the Dictionary of Occupational Titles ("DOT") and census reports. 20 C.F.R. §§ 404.1566(d), 416.966(d). The ALJ specifically noted that the use of the "Census Report to estimate job numbers … is a source of 'reliable' job information pursuant to CFR 404.1566(d)" and the testimony "has been consistent with the DOT and Selected Characteristics of Occupations." Dkt. No. 5-3, p. 39. Despite

SKillTRAN's absence from the list of reliable sources identified in the regulations and VE Roberts reliance on that software, the record reflects an adequate basis to rely on the testimony of VE Roberts. *See Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). (discussing the use of whole record to support availability of work when conflicts arise between the VE testimony and the DOT). Figueroa's contention that a 40-hour workweek was essential to the ALJ's determination overlooks VE Robert's use of the United States Census Bureau's definition of "full-time year-round workers" as those "who usually worked 35 hours or more per week." [4] Dkt. No. 8, p. 21. Given the work history, occupational sources, and vocational testimony, this Court recommends, should this issue be reached, finding that the relevant legal standards were used and substantial evidence supports the ALJ's determination that there are a significant number of jobs available in the national economy which Figueroa could perform.

## VIII. Recommendation

This Court finds that the ALJ's disability determination is not supported by substantial evidence. After review of the parties' briefs, the record, and the relevant law, the undersigned Magistrate Judge RECOMMENDS that the final decision of the Social Security Administration denying benefits to Figueroa be REJECTED. This Court further RECOMMENDS the decision of Commissioner be REMANDED for further administrative proceedings consistent with this recommendation.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1). When filing an objection, a party must object to specific facts or legal findings in this Report and Recommendation. The District Judge is not required to consider frivolous, conclusive, or general objections. *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

---

[4] UNITED STATES CENSUS BUREAU, *Frequently Asked Questions (FAQs) about Labor Force Statistics,* https://www.census.gov/topics/employment/labor-force/about/faq.html#par_textimage_735773790 [https://perma.cc/3DMQ-TTT4].

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a *de novo* review of the record before adopting these findings.  If the District Judge chooses to adopt such findings without conducting a *de novo* review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error.  *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 248 (5th Cir. 2017).

Signed on August 13, 2024.

Karen Betancourt
United States Magistrate Judge